BOOKER T. SHIPP,

Plaintiff,

v.

ROBERT HOBDAY,

Defendant.

OPINION and ORDER

17-cv-955-jdp

Plaintiff Booker T. Shipp, appearing pro se, is an inmate at New Lisbon Correctional Institution. Shipp alleges that defendant Robert Hobday, the dentist at the prison, failed to fully extract one of his teeth and then delayed in correcting the mistake by failing to extract the rest of the tooth until months later, after it had become infected and caused him severe pain. Shipp contends that Hobday violated his rights under the Eighth Amendment to the United States Constitution and under Wisconsin medical malpractice law. Hobday has filed a motion for summary judgment, contending that all of his treatment decisions were appropriate.[1]

I will grant Hobday's motion for summary judgment in part. No reasonable jury could conclude that some of the treatment decisions Hobday made over the months-long course of treatment here were the result of him consciously disregarding Shipp's problem. But there are factual disputes regarding Hobday's decision not to perform surgery after Shipp's extraction wound became infected, and that decision raises complex medical issues concerning the

---

[1] Shipp has filed a motion for leave to file a sur-reply to the summary judgment motion, along with a proposed sur-reply brief. Dkt. 45 and Dkt. 47. I will grant that motion. Sur-replies are generally disfavored by the court, but nothing in Shipp's brief would affect my decision on the summary judgment motion.

adequacy of Hobday's treatment. So I will deny Hobday's motion for summary judgment on that aspect of Shipp's Eighth Amendment claims and I will attempt to recruit counsel to represent Shipp at trial. I will also deny Hobday's motion for summary judgment on portions of Shipp's medical malpractice claims.

UNDISPUTED FACTS

The following facts are undisputed unless noted otherwise.

Plaintiff Booker T. Shipp is a prisoner at New Lisbon Correctional Institution (NLCI). Defendant Dr. Robert Hobday was employed by the Wisconsin Department of Corrections as a dentist at NLCI.

Shipp submitted dental service requests on December 27 and 28, 2016, complaining of pain in one of his left lower molars. Hobday reviewed the requests on December 29, classified Shipp's problem as "urgent," and scheduled an appointment for the same day. Hobday recommended extraction of Shipp's molar. Shipp agreed to the extraction.

Hobday could not exact the entire tooth at once; he had to perform a "flap and section" procedure to remove it. In this type of procedure, the tooth is broken and then removed in sections. In ordinary dental practice, the dentist would explain in the patient's chart if he was ultimately unable to extract all of the tooth fragments. Shipp's record does not include any indication that Hobday was unable to remove the entire tooth. Hobday prescribed Shipp pain medication.

On January 2, 2017, Shipp complained of severe pain at the extraction site. Hobday saw him the next day and diagnosed him with dry socket, a known complication of molar extractions. A dry socket happens when the blood clotting at the socket of the removed tooth

breaks off or dissolves before the wound is healed. Hobday treated the dry socket by filling the wound with a paste to cover the exposed wound.

The next day, Shipp complained again of pain. Hobday saw Shipp a day later; he flushed the socket and placed more dry-socket paste at the site. Hobday also prescribed Shipp tramadol for the pain. A few days later, Shipp complained of continuing pain, although he noted that it was getting better. Hobday placed more paste at the extraction site. On January 10, 2017, Shipp submitted a DSR noting that he ran out of antimicrobial mouthwash and was worried that his open wound could get infected. Hobday responded that the mouthwash was no longer necessary (it's unclear when Shipp was first prescribed this mouthwash).

Shipp did not submit another dental service request until March 26, 2017. His request stated that his dry socket had healed, but a piece of food had lodged in a pocket at the extraction site, causing an extremely painful infection. Hobday reviewed the request on March 27 and saw Shipp that day. The parties dispute much of what happened at this meeting.

Shipp's version of events is as follows: he told Hobday that he was in severe pain and that there was "something" in the extraction wound. He asked Hobday to take an x-ray. Hobday squeezed pus and blood from the extraction site and he flushed the site with water. Hobday told Shipp, "It does feel like something is in the extraction site." Dkt. 34, at 59. Hobday wanted him to consent to surgery so that Hobday could scrape out the infection and "see what's going on in there." *Id.* Hobday initially planned on an immediate surgery. The surgical consent form Hobday prepared has boxes checked for the surgical options "Extraction of tooth" and "Excise soft tissue lesion." Shipp takes this to mean that Hobday planned on the surgery having two components: excision of the lesion and extraction of a remining tooth fragment, which Shipp believes was the "something" that he and Hobday both felt in the

wound. But Hobday backed out of performing the surgery, stating that there was not enough time for him to perform it. And Hobday wouldn't give Shipp an x-ray because there wasn't enough time for that either.

Hobday does not present his own declaration recounting the events. Instead he relies largely on the contemporaneous medical record. Hobday's treatment note for March 27 shows that he diagnosed Shipp with a granulation lesion. *See* Dkt. 34-1, at 19. Hobday contends that the sole purpose of the planned surgery was to excise the granulation lesion, and that the checked box for extraction of a tooth was an error because it didn't match the diagnosis. Hobday agrees that he did not perform surgery on Shipp that day, but he contends that Shipp declined surgery; Hobday's treatment note shows that after Shipp initially consented, there was "more discussion" and Shipp "only wished to have it flushed." Dkt. 34-1, at 19. However, Shipp points out that the "refusal of recommended treatment" part of the consent form—which a patient would ordinarily sign if he indeed refused treatment—was left blank. *Id.*

It's undisputed that instead of surgery, Hobday flushed the wound and prescribed Shipp antibiotics, which cleared up the infection. Shipp says that he continued to experience pain, albeit less severe pain, from the wound being open.

On April 9 and 10, 2017, Shipp wrote letters to the health services unit manager stating that the wound had not healed even after he finished his course of antibiotics. Shipp asked to be seen by someone other than Hobday. The manager responded that she would forward the letters to Hobday. There is nothing in the record showing that Hobday received or responded to these letters.

On April 18, Shipp "doubled over" with severe pain from the extraction site. Blood oozed from the site and Shipp could feel a "rock hard substance" in the wound. Dkt. 39, at 2.

He saw what he believed to be a fragment of tooth poking out of the site. Shipp filed a health service request about the problem. Shipp saw two nurses the next day. Both of them said that it looked like a piece of tooth had emerged from his gums.

Hobday reviewed the request on April 20, and he saw Shipp the same day. Hobday diagnosed Shipp as having a bone fragment protruding from the site, which can be a complication from tooth extraction.[2] Hobday removed the fragment and showed it to Shipp. Shipp thought it looked like part of his tooth, although at his deposition he admitted that he did not know what a bone fragment would look like. Shipp's pain resolved in about a week. Shipp says that now his jawbone "appears to be greatly reduced" at the area near the extraction site, Dkt. 39, at 3, which I take to mean that Shipp has suffered long-term jaw damage from these events.

ANALYSIS

Shipp brings Eighth Amendment claims against defendant Hobday for failing to act after noticing that some of Shipp's tooth remained after the first surgery and that Shipp had a severe infection. Shipp also brings Wisconsin-law medical malpractice claims against Hobday for failing to adequately perform the first tooth extraction and for waiting to perform the second surgery.

---

[2] Hobday's proposed findings say that this condition is "common in adults that have extractions," citing his expert's report. Dkt. 42, at 23, ¶ 62. But that does not accurately reflect the expert's statement: the expert says that this complication "may" happen, not that it is common. Dkt. 29, at 4, ¶ 15.

### A. Eighth Amendment

The Eighth Amendment prohibits prison officials from consciously disregarding prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A defendant "consciously disregards" an inmates' need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Shipp's claims concern a months-long course of treatment by Hobday, made up of four parts: (1) the December 2016 tooth extraction; (2) the time between the extraction and the parties' March 27, 2017 meeting; (3) the March 27 meeting itself; and (4) the April 20, 2017 surgery. I conclude that only Shipp's claim about the third of these parts survives summary judgment.

The parties dispute the precise outcome of the first surgery. Shipp says that Hobday failed to extract the entire tooth. Two nurses stated that there was a part of the tooth remaining

at the site, and surgical consent form for the second surgery had the "extraction of tooth" box checked. Dkt. 34-2, at 22. Hobday's notes say that it was a piece of bone, not part of the tooth. Hobday argues that neither Shipp nor the nurses have the medical training to be able to tell whether the protrusion was tooth or bone, and that the "extraction" entry on the surgical consent form was an error. I agree that Shipp doesn't have the medical knowledge to dispute Hobday's note, but Hobday doesn't explain why nurses wouldn't have the knowledge necessary to tell the difference between bone and tooth. The nurse's statement, coupled with the surgical consent form calling for an extraction, suggests that part of the tooth still needed to be extracted. Because I must draw all reasonable inferences from the facts in Shipp's favor as the party opposing summary judgment, *see Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999), I will assume that the protrusion was a leftover part of the extracted tooth.

But for purposes of Shipp's Eighth Amendment claims, it doesn't necessarily matter whether the protrusion was bone or tooth; the question is whether Hobday was aware that Shipp had a serious medical need and whether Hobday disregarded that need. There is no evidence suggesting that Hobday intentionally botched the first surgery. So even if he mistakenly failed to extract part of Shipp's tooth, or made any other mistake during the surgery that led to complications, that is at most negligence, which cannot support an Eighth Amendment claim. So I'll grant summary judgment to Hobday on Shipp's Eighth Amendment claim based on Hobday's performance of the initial extraction.

A few days after the December 2016 surgery, Shipp reported severe pain. Hobday saw him the next day and twice more within that week, assessing him with a dry socket and treating the wound with paste and Shipp's pain with tramadol. This treatment appears to have worked because Shipp didn't file another health service request about the problem for more than two

months. Shipp provides inconsistent accounts of whether the first surgery left him in more pain than you would expect from the ordinary post-surgical healing process, but even if Shipp suffered unusual pain, there's no evidence showing that Hobday was aware of it. So Shipp cannot show that Hobday violated the Eighth Amendment by failing to adequately treat Shipp during this period. I'll grant summary judgment to Hobday on Shipp's Eighth Amendment claim based on this phase of the post-extraction treatment.

The last part of Hobday's treatment was when the tooth fragment became exposed in mid-April and caused Shipp severe pain. Hobday responded promptly to the exposed fragment, removing the fragment the same day he reviewed Shipp's request. Shipp fails to show that Hobday violated the Eighth Amendment in responding to this complaint, so I'll grant summary judgment to Hobday on Shipp's Eighth Amendment claim about that part of the treatment.

That leaves Hobday's round of treatment in late March 2017, after Shipp complained that the extraction site was infected and painful. Hobday diagnosed him with a granulation lesion, flushed the lesion, and prescribed him antibiotics, which cleared up the infection. So it is undisputed that Hobday provided Shipp some treatment and that the treatment, at least in part, addressed Shipp's needs. But the parties dispute how Hobday arrived at that particular course of treatment, whether Hobday was aware of the tooth fragment in the extraction site, and whether Hobday should have done more to treat that problem.

Shipp says that in response to his complaint of there being "something" in the socket, Hobday agreed that it felt like something was in the wound. Hobday initially obtained Shipp's consent to surgery: the consent form had checked boxes for "Extraction of tooth" and "Excise soft tissue lesion." Shipp takes this to mean that Hobday knew that there was still a part of his tooth left at the extraction site; Hobday argues that this checked box was merely an error.

Shipp says that Hobday backed out of performing the surgery because there was not enough time for him to perform it. Hobday wouldn't give Shipp an x-ray either because there wasn't time. Hobday contends that Shipp changed his mind about consent; Hobday's treatment record shows that after Shipp consented, there was "more discussion" and Shipp "only wished to have it flushed," although the "refusal of recommended treatment" part of the consent form was left blank. Dkt. 34-1, at 19. I must accept Shipp's version of events, so I will accept Shipp's statement that he consented to the surgery and that it was Hobday's decision not to perform it.

Ultimately, the tooth fragment erupted in mid-April and caused Shipp severe pain, raising the question whether Hobday violated the Eighth Amendment in late March by choosing not to perform the surgery or take an x-ray. Delay in medical treatment can violate the Eighth Amendment. *See, e.g.*, *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). So can providing treatment that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008).

As evidence that he provided adequate treatment, Hobday provides the medical record from late March in which he indicated that Shipp didn't want to have the surgery. Hobday presents the record from April stating that the fragment he removed was bone, not part of a tooth, and he contends that the medical record is devoid of evidence that a bone fragment should have been diagnosed before it emerged from Shipp's gums. Hobday also relies on expert testimony from dentist William Giswold, who previously worked as a dentist for DOC. Giswold says that an x-ray would not have picked up the bone fragment. I'll accept Giswold's statement

that an x-ray wouldn't have been useful to detect a bone fragment. Griswold also says more generally that Hobday's treatment decisions were appropriate. *See* Dkt. 29, at 5.

But Giswold does not explain why Hobday's March 27 treatment (antibiotics and flushing the wound, but not surgery) was appropriate. This is not surprising, because Giswold worked off the medical record stating that *Shipp* declined surgery. But I have accepted Shipp's statements that he wanted surgery and that it was Hobday who called it off for lack of time. I accept Shipp's statements that the fragment at the extraction site was part of his tooth, not an undetectable bone fragment, and Hobday called off the surgery despite noticing "something" in the extraction site. There's a reasonable inference that this was the tooth fragment.

It's not clear to me that the Eighth Amendment required Hobday to perform the surgery immediately at the March 27 appointment, because there is no evidence that the fragment in the extraction site was so pressing an emergency that the surgery should have been performed right away. But from Shipp's version of events, it appears that Hobday knew that the fragment remained in the extraction site, yet he did nothing to address the underlying problem with the fragment: even if there wasn't time to perform the surgery immediately, Hobday did not set up a new surgery appointment or flag the problem for other personnel responsible for scheduling dental surgeries. I have no evidence from either party explaining whether it's appropriate to leave the fragment in with no plan to remove it, although common sense—and the facts of this case—suggest a strong likelihood that this would lead to painful complications down the road.

I previously denied Shipp's motions for the court's assistance in recruiting him counsel, but I told him that I would reconsider those denials if the case boiled down to complex issues too difficult for him to litigate himself. *See* Dkt. 17; Dkt. 23, Dkt. 44. At this point, the case boils down to two major issues: (1) whether Shipp declined surgery on March 27; and (2) if

Shipp wanted the surgery and Hobday chose not to perform it, whether that failure to treat Shipp violated the Eighth Amendment. The first question is one of fact for the jury to decide. The second is the type of complex medical question that the Court of Appeals for the Seventh Circuit has suggested would benefit from recruitment of counsel or appointment of a medical expert. *See, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) (litigation is "even more challenging in cases, like Perez's, where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received"); *Garner v. Sumnicht*, 554 F. App'x. 500, 501 (7th Cir. 2014) ("Under these circumstances, the district court should have attempted to recruit a lawyer for Garner, who appears to be unable to present a case dependent on medical evidence—yet has enough of a substantive claim that the court cannot dismiss it as obviously deficient."). Because I conclude that the assistance of counsel is likely necessary to address the medical issues in this case, I will grant Shipp's request for recruitment of counsel, stay the case, and attempt to locate counsel for him.[3]

If I find counsel willing to represent Shipp, I will advise the parties of that fact. Soon thereafter, a status conference will be held to set a new schedule. I anticipate that it will involve reopening discovery, which will now be more narrowly focused. Shipp should know that because of the large number of requests for counsel that the court receives, the search for counsel may take several months and there is no guarantee that the court will find counsel willing to represent him.

---

[3] Hobday has filed a motion to stay deadlines for submission of pretrial materials. Dkt. 48. I will deny that motion as moot because I am staying the case pending recruitment of counsel.

**B. Wisconsin-law medical malpractice**

Shipp also brings claims under Wisconsin medical malpractice law: Shipp contends that Hobday was negligent both in failing to adequately perform the first surgery and in waiting to perform the second.

Under Wisconsin law, a negligence or medical malpractice claim requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. Because there are factual disputes over whether Hobday failed to fully extract Shipp's tooth in the first surgery and whether Hobday chose not to perform a second surgery despite a fragment of tooth or bone in the extraction site, and because Shipp's claim may come down to complex issues regarding the proper course of treatment, I will deny Hobday's motion for summary judgment on Shipp's malpractice claims.

ORDER

IT IS ORDERED that:

1.  Plaintiff Booker T. Shipp's motion for leave to file a sur-reply opposing defendant Robert Hobday's motion for summary judgment, Dkt. 45, is GRANTED.

2.  Defendant's motion for summary judgment, Dkt. 30, is GRANTED in part and DENIED in part as discussed in the opinion above.

3.  Plaintiff's motion for the court's assistance in recruiting him counsel, Dkt. 40, is GRANTED. All remaining deadlines are STRUCK and the case is STAYED pending recruitment of counsel for plaintiff.

4.  Defendant's motion to stay the deadlines for submission of pretrial materials, Dkt. 48, is DENIED.

Entered November 27, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge